**IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF GEORGIA**

| | | |
|---|---|---|
| **M.W.** | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 1:25-cv-04747-SDG |
| | : | |
| **RADHESHVAR, LLC D/B/A MOTEL 6 AND** | : | JURY TRIAL DEMANDED |
| **D/B/A SUPER 8, CPLG PROPERTIES, LLC,** | : | |
| **KUZZINS BUFORD, LLC, RITZ CARLTON** | : | |
| **HOTEL COMPANY, LLC,** | : | |
| | : | |
| Defendants | : | |

**AMENDED COMPLAINT**

AND NOW, comes the Plaintiff, by Andreozzi + Foote, who files this Amended Complaint

against the Defendants Radheshvar, LLC d/b/a Motel 6 and d/b/a Super 8, CPLG Properties, LLC,

Ritz Carlton Hotel Company, LLC, and Kuzzins Buford, LLC, and in support thereof, states as

follows:

**INTRODUCTION**

1.      This action for damages is brought by Plaintiff, a survivor of sex trafficking, under

the Federal William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008

("TVPRA"), 18 U.S.C. § 1595.

2.      Sex trafficking is defined under 22 U.S.C. § 7102 (11) as "[t]he recruitment,

harboring, transportation, provision, obtaining, patronizing, or soliciting of a person for the

purposes of a commercial sex act, in which the commercial sex act is induced by force, fraud, or

coercion, or in which the person induced to perform such an act has not attained 18 years of age."

3.      Plaintiff meets the definition of a sex trafficking victim, induced by force, fraud,

and coercion by a traffickers to engage in commercial sex at the subject hotels, by being psychologically and physically prohibited from escape by a traffickers, or alternatively, was a minor at the time of the trafficking.

4. The Trafficking Victims Protections Reauthorization Act ("TVPRA") provides a civil remedy for victims of a violation of the act.

5. Section 1595 of the TVPRA provides that "[a]n individual who is a victim of a violation of this chapter may bring a civil action against the trafficker (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorney's fees." 18 U.S.C. § 1595.

**PARTIES**

6. Due to the sensitive, private, and potentially retaliatory nature of the allegations herein, Plaintiff's name and address is not contained herein to protect her safety, privacy and identity. Similarly situated plaintiffs nationwide have proceeded by pseudonym or by their initials due to the foregoing.

7. Plaintiff is currently a resident of Georgia.

8. Plaintiff was born in 1999.

9. At all times relevant and material, Defendant Radheshvar, LLC d/b/a Motel 6 was a hotel owner, hotel operator, franchisee, manager, and/or supervisor of a hotel located at 2820 Chamblee Tucker Rd, Atlanta, GA 30341. As such, it is responsible for the subject hotel during the period Plaintiff was sex trafficked on said premises.

10. At all times relevant and material, Defendant Radheshvar, LLC d/b/a Super 8 was a hotel owner, hotel operator, franchisee, manager, and/or supervisor of a hotel located at 2822 Chamblee Tucker Rd, Atlanta, GA 30341. As such, it is responsible for the subject hotel during the period Plaintiff was sex trafficked on said premises.

11. At all times relevant and material, Defendant CPLG Properties, LLC was the owner of La Quinta Inn & Suites by Wyndham Atlanta Midtown – Buckhead located at 2535 Chantilly Dr NE, Atlanta, GA, 30324. CPLG was a hotel owner, hotel operator, franchisee, manager, and/or supervisor of the hotel. As such, it is responsible for the subject hotel during the period Plaintiff was sex trafficked on said premises.

12. At all times relevant and material, Defendant Kuzzins Buford, LLC was the owner of Microtel Inn & Suites by Wyndham Atlanta/Buckhead Area Microtel located at 1840 Corporate Blvd NE, Atlanta, GA 30329. Kuzzins was the hotel owner, hotel operator, franchisee, manager, and/or supervisor of the hotel. As such, it is responsible for the subject hotel during the period Plaintiff was sex trafficked on said premises.

13. At all times relevant and material, Defendant Ritz Carlton Hotel Company, LLC was a hotel owner, hotel operator, franchisee, manager, and/or supervisor of a hotel located at 3434 Peachtree Rd NE, Atlanta, GA, 30326. As such, it is responsible for the subject hotel during the period Plaintiff was sex trafficked on said premises.

14. During the relevant period, Defendants were the operators of the subject aforesaid premises.

15. Defendants acted as a franchisee and not a franchisor of the subject aforesaid premises.

## JURISDICTION AND VENUE

16.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because this action arises under the Constitution, laws, or treaties of the United States, namely 18 U.S.C. § 1595.

17.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the Count asserted in this action occurred in the judicial district where this action was brought, and Defendants conducts business within this District pursuant to 28 U.S.C. § 1391(b).

## FACTS

18.     As it pertains to the subject Defendants, Plaintiff was sex trafficked at the aforesaid hotels, owned and operated by Defendants, by her traffickers in 2015.

19.     Plaintiff was sex trafficked by Jamaal Obie and his brother, Quintavious Obie ("Perpetrators").

20.     At the time she was trafficked, Plaintiff was aged between fifteen (15) and sixteen (16).

21.     In 2015, Plaintiff's family was moving, and Plaintiff did not want to move with them.

22.     Plaintiff met the Perpetrators, and they offered her a place to stay.

23.     Once she moved in with them, they told her that they would set her up with a way to make money to take care of herself.

24.     Plaintiff was then sex trafficked by Perpetrators.

25.     Plaintiff was posted on Backpage by her Perpetrators.

26.     Perpetrators used drugs and alcohol to keep Plaintiff compliant.

27.     Perpetrators threatened Plaintiff's family to keep her compliant.

28.    Perpetrators issued verbal threats to Plaintiff to keep her quiet.

29.    Perpetrators frequently made Plaintiff book the rooms at hotels using Quintavious' wife's identification. Quintavious' wife's name is Emily Waddell ("Emily").

30.    Other times, Quintavious or Emily would book the rooms where the trafficking would occur.

31.    Plaintiff was sex trafficked at the Defendant hotels for almost an entire year until the Georgia Bureau of Investigation ("GBI") found her through a Backpage ad.

32.    The GBI performed a "sting" operation at the Ritz-Carlton Buckhead and rescued Plaintiff from her traffickers.

**REMAINDER OF PAGE LEFT INTENTIONALLY BLANK**

33.     While the police never found Jamaal, Quintavious was subsequently convicted of sex trafficking.



**PRESS RELEASE**

# Atlanta sex trafficker sentenced to 21 years

Tuesday, April 23, 2019

**Share**   **>**

**For Immediate Release**

U.S. Attorney's Office, Northern District of Georgia

ATLANTA - Quintavious Obie has been sentenced to federal prison for engaging in sex trafficking and witness tampering. The defendant was originally indicted for sex trafficking in 2018 but continued to harass and intimidate victims and was charged with witness tampering as well.

"Obie lured his victims into prostitution and after he was arrested continued to harass and intimidate them," said U.S. Attorney Byung J. "BJay" Pak. "Sex trafficking exploits and traumatizes some of the most vulnerable members of our society. We are sending a clear message to those seeking to engage in this type of criminal activity: you will be caught and prosecuted."

"This defendant showed a complete disregard for the women he entrapped into sex trafficking," said Chris Hacker, Special Agent in Charge of FBI Atlanta. "The FBI and our law enforcement partners made this case a priority and were successful in getting Obie off our community's streets, despite his efforts to circumvent the charges against him by intimidating his victims."

"Human trafficking is a form of modern-day slavery, and the threats and abuse inflicted on these particular victims only adds to the heinous nature of the crime," said Special Agent in Charge of Homeland Security Investigations Atlanta Nick S. Annan. "HSI is committed to working with our law enforcement partners to find and prosecute criminal traffickers while ensuring the victims of this terrible crime are rescued and get the care they need."

According to U.S. Attorney Pak, the charges and other information presented in court: Quintavious Obie lured young women from rural areas in South Carolina to Atlanta with promises of a lucrative lifestyle. However, once they arrived in Atlanta, they were forced into a life of prostitution through mental and physical abuse. The victims were forced to engage in prostitution and to turn over to Obie all of the money they received. His victims were not allowed to go anywhere without his knowledge nor see anyone unless they were a paying client. Any deviation from his rules brought severe punishment.

34.     Following her rescue by GBI, Plaintiff was sent to a juvenile detention center until she was found placement in KidsPeace, a mental health residential treatment center.

35.     Plaintiff was subsequently transferred to Youth Villages, another mental heath residential treatment center.

36.     Plaintiff stayed at Youth Villages until she successfully graduated from the program at seventeen (17) years old.

37. Sex trafficking occurred at the subject hotels, upon information and belief, prior to Plaintiff's trafficking.

38. Defendants knew or should have known that Plaintiff was a victim of a venture that involved sex trafficking by force, threat of force, fraud, or coercion.

39. As hotel owners and hotel operators, Defendants controlled the training, policies, and decisions on implementation and execution of anti-trafficking policies, protocol, rules and guidelines for its subject property where Plaintiff was sex trafficked.

40. A significant portion of all sex trafficking in the United States of America occurs within the hospitality industry at hotels and motels.

41. The hospitality industry is a major life source of the human trafficking epidemic both in the U.S. and abroad.[1] The United Nations,[2] international non-profits,[3] and the U.S. Department of Homeland Security,[4] have documented this well-known epidemic of human trafficking for years and brought particular attention to the indispensable role of hotels.

---

[1] Giovanna L. C. Cavagnaro, *Sex Trafficking: The Hospitality Industry's Role and Responsibility*, CORNELL UNIVERSITY SCHOOL OF HOTEL(S) ADMINISTRATION (2017), http://scholarship.sha.cornell.edu/honorstheses/3 /.

[2] *Global Report on Trafficking in Persons,* UNITED NATIONS OFFICE ON DRUGS AND CRIME (2020), 84 8available at https://www.unodc.org/documents/data-and analysis/tip/2021/GLOTiP_2020_15jan_web.pdf /. See also *We must act together to fight exploitation and human trafficking in tourism, say United Nations and international partners,* UNITED NATIONS OFFICE ON DRUGS AND CRIME (April 24, 2012) available at https://www.unodc.org/unodc/en/press/releases/2012/April/we-must-act-together-to-fight-exploitation-and-human-trafficking-in-tourism-say-united-nations-and-international-partners.html /.

[3] The Polaris Project and ECPAT-International have published extensive reports and professional toolkits on human trafficking in the hospitality industry for years.

[4] Human Trafficking and the Hospitality Industry, U.S. DEPARTMENT OF HOMELAND SECURITY (2020), available at https://www.dhs.gov/blue-campaign/hospitalityindustry /; Hospitality Toolkit, U.S. DEPARTMENT OF HOMELAND SECURITY (2016), available at https://www.dhs.gov/sites/default/files/publications/blue-campaign/toolkits/hospitality-toolkit-eng.pdf /.

42.     In 2004, End Child Prostitution and Trafficking ("ECPAT-USA") launched the Tourism Child-Protection Code of Conduct (the "Code") in the United States, identifying the steps companies would need to take to prevent child sex trafficking. ECPAT-USA identified hotel(s)-specific best practices for preventing sex trafficking, such as: (1) not renting by the hour; (2) not permitting cash payments; (3) monitoring online sex ads such as Craigslist and Backpage for its hotel(s) name and pictures of the rooms; (4) changing Wi-Fi passwords in rooms and cafes regularly; (5) watching for a trend of visitors to the same room; (6) being aware of rooms with excess condoms, lubricants, and towels; (7) requiring all visitors to be logged, including guest name, visitor name, arrival time, departure time, and room number.

43.     Further, nationwide campaigns have recognized the issue of human trafficking in the hotel industry and the lack of internal policies to address the issue and took initiative as early as 1997 with the United Nations Blue Heart Campaign[5] and domestically in 2010 with the Department of Homeland Security's Blue Campaign.[6]

44.     These efforts sought to educate both the public and private sectors on identifying and combatting human trafficking, including the hospitality industry, and both campaigns released free online resources and toolkits publicly accessible to any entity concerned with human trafficking.

45.     The passage of the TVPA in 2000 and the passage of the TVPRA in 2008 put the Defendants on notice of the high likelihood of these illegal acts occurring on the subject hotels'

---

[5] *The Blue Heart Campaign,* UNITED NATIONS (2022), https://www.unodc.org/blueheart/#:~:text=The%20Blue%20Heart%20Campaign,help%20prevent%20this%20heinous%20crime /.
[6] *DHS Blue Campaign Five Year Milestone*, DEP'T OF HOMELAND SECURITY (Jul. 22, 2015), https://www.dhs.gov/blog/2015/07/22/dhs-blue-campaign-five-year-milestone /.

premises which, at a minimum, warranted them to be more vigilant and proactive in preventing this conduct.

46.    Years before Plaintiff was trafficked, Defendants knew or should have known of the critical role that the hotel industry plays in enabling the sex trade industry and of the widespread national epidemic of hotel(s)/motel sex trafficking.

47.    By 2012, training guides and videos were available through the American Hotel(s) Lodging Association (AHLA) and ECPAT-USA and via other resources.

48.    Before and during the relevant period, Defendants failed to implement sufficient educational and training programs on sex trafficking within its business chain of command, as well as failed to implement policies for preventing, identifying, reporting, documenting, investigating, and stopping sex trafficking at the subject hotels.

49.    Due to the involvement and affirmative actions of Defendants (as owner and operator, and by its staff and employees while acting within the scope of their employment), in associating with, facilitating and enabling the undertaking of the sex trafficking of Plaintiff by her traffickers on Defendants' premises in violation of the TVPRA, including, but not confined to, by:

    a. Defendants repeatedly rented rooms to Plaintiff's traffickers when Defendants knew or should have known said traffickers was engaged in sex trafficking on Defendants' premises including as to Plaintiff in violation of the TVPRA;

    b. Defendants associating with Plaintiff's traffickers in an effort to force her to serve their business objective;

    c. Defendants allowing commercial dealings with the aforesaid traffickers (e.g., in the form of room rentals) to continue on the subject premises and to be reinstated for a profit motive;

    d. Defendants' staff and employees acting as lookouts and informants, during the scope of their employment, for the benefit of the traffickers so as to alert the aforesaid traffickers of police activity or similar type warning alerts, or otherwise failing to respond to clear signs of trafficking;

e. Defendants actively advancing the sex trafficking operation of Plaintiff's traffickers by knowingly facilitating and negligently facilitating the venture's activities, i.e., the sex trafficking of Plaintiff; and,

f. Defendants were otherwise being actively involved and affirmatively enabling Plaintiff's traffickers and facilitating the venture's success, Plaintiff was caused to be sex trafficked by her traffickers on Defendants' premises in violation of the TVPRA.

50.     Before and during the relevant period, Defendants failed to implement sufficient educational and training programs on sex trafficking within its business chain of command, as well as failed to implement policies for preventing, identifying, reporting, documenting, investigating, and stopping sex trafficking at the subject hotels.

51.     Defendants failed to act upon the obvious and overt signs alerting them to the sex trafficking taking place at these subject hotels including as to Plaintiff herein and in violation of the TVPRA.

52.     Had the Defendants timely and properly implemented policies and procedures common and reasonably accepted in the hospitality industry concerning anti-trafficking, safety and security it is more likely than not that the injuries suffered by the Plaintiff at the subject hotels would have been prevented or mitigated.

53.     Due to the failure of Defendants to timely and properly implement anti-trafficking policies and practices, Plaintiff was repeatedly victimized and trafficked for sex on Defendants' premises in violation of the TVPRA.

54.     Defendants by its passive or active involvement and affirmative enabling of the subject trafficking was a proximate and competent cause and substantial factor in causing P Plaintiff severe injuries in this case including, but not limited to, her being the victim of sex trafficking, which has caused Plaintiff severe injury.

55.    Because of the foregoing conduct of Defendants, the Plaintiff suffered severe and permanent injuries and damages, as outlined herein.

## CAUSES OF ACTION

### COUNT I
### VIOLATION OF 18 U.S.C. § 1595 ("TVPRA")

56.    Plaintiff sets forth an action for violation of 18 U.S.C § 1595 as against the above-captioned Defendants.

57.    At all relevant times, Plaintiff was involved in the staffing and operation of the subject hotels where Plaintiff was trafficked for sex.

58.    Plaintiff is a "victim" of sex trafficking as protected under applicable provisions of the TVPRA.

59.    As it pertains to this Plaintiff, Plaintiff was sex trafficked at the subject hotels hotel(s) owned and operated by Defendants.

60.    Section 1591 of the TVPRA criminalizes sex trafficking of adults by force, fraud or coercion. See 18 U.S.C. § 1591.

61.    Separately, § 1595 of the TVPRA provides individuals who are victims of sex trafficking with a civil remedy against the traffickers or the beneficiaries of the sex trafficking. See 18 U.S.C. §1595(a).

62.    More specifically, § 1595 provides for three distinct causes of action: (1) a claim against the traffickers who directly violated § 1591(a)(1) – a criminal statute; (2) a beneficiary claim against the traffickers who directly violated §1591(a)(2) – a criminal statute; and (3) a beneficiary claim against a civil Defendants who did not violate § 1591, but who "knowingly benefit[ed], financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter." 18

U.S.C. § 1595(a); the subject lawsuit is applicable to prong three, i.e. a beneficiary claim against a civil Defendants.

63.     In order to induce Plaintiff by force, fraud and coercion to engage in sex with sex buyers at the subject hotels, traffickers used various means to do so including but not limited to (a) traffickers utilizing physical and verbal abuse on and as to Plaintiff and at times in plain sight and earshot of Defendants' staff; (b) traffickers instilled in Plaintiff the fear of severe bodily injury and/or fear of death if traffickers directives were not complied with; (c) psychological coercion; (d) withholding Plaintiff's identifying document(s); and (e) other means of force, fraud and coercion used by the traffickers of Plaintiff to induce sex with sex buyers at the subject hotels.

64.     Defendants knowingly benefited from the sex trafficking of Plaintiff at the subject hotels by receiving payment for the room(s) rented by her traffickers (or at the direction of her traffickers) that were used for sex trafficking, including as to the Plaintiff, in violation of the TVPRA.

65.     Defendants rented room(s) to individuals it knew or should have known were engaged in the sex trafficking, and of Plaintiff in particular, in violation of the TVPRA.

66.     The rental of a hotel(s) room constitutes a financial benefit from a relationship with the traffickers sufficient to meet "financially benefitted" element of the §1595(a) standard.

67.     Plaintiff traffickers took proceeds derived from the sex trafficking occurring on the subject premises to continue to pay for room(s) rented at the subject hotels during the time that Plaintiff was being sex trafficked there in violation of the TVPRA.

68.     In addition, Defendants received other financial benefit including, but not limited to, from Wi-Fi which, in part, enabled the subject sex trafficking to occur (as Plaintiff was advertised by her traffickers online) and from such Wi-Fi service Defendants, upon information

and belief, received financial benefit.

69.     Defendants participated in a venture by operating the subject hotels that rented rooms to individuals that Defendants, knew or should have known were involved in sex-trafficking, including as to the Plaintiff herein, in violation of the TVPRA.

70.     During the time Plaintiff was trafficked at the subject hotels, Plaintiff's traffickers had direct interaction with employee(s) and staff of Defendants by means of paying, befriending, and/or compensating employee(s) and staff member(s) of said Defendants to act as lookout(s)/informant(s) for Plaintiff's traffickers, while acting in their scope of employment, so as to inform the traffickers of police activity or other similar type alerts.

71.     In this case, during the relevant period alleged herein, Defendants took part in a common undertaking or enterprise involving risk and potential profit with Plaintiff's traffickers that violated the TVPRA.

72.     Operating a hotel and renting out rooms is an enterprise involving risk and potential profit.

73.     Defendants operating the subject hotels and renting out rooms to Plaintiff's traffickers was an enterprise involving risk and potential profit.

74.     Defendants operating the subject hotels and renting out rooms to Plaintiff's traffickers was an enterprise involving risk and potential profit which violated the TVPRA as to the Plaintiff herein.

75.     By renting rooms to Plaintiff's traffickers, the Defendants, as hotel owners and operators, were associating with Plaintiff's traffickers in an effort to force Plaintiff to serve their business objective.

76.     The modus operandi of the traffickers was to renew the room rentals daily.

77. A continuous business relationship existed between the subject hotels, its agents, employees and staff, and Plaintiff's traffickers, in part, in that the hotels repeatedly rented rooms, and/or repeatedly renewed room rentals, to individuals they knew or should have known were involved in sex trafficking on the premises, including as to the Plaintiff.

78. Plaintiff's traffickers had prior commercial dealings with the subject hotels which the traffickers and Defendants wished to reinstate for profit when Plaintiff's traffickers repeatedly rented rooms and/or repeatedly renewed room rentals that were used for trafficking of victims including Plaintiff.

79. These Defendants had constructive and actual knowledge that the undertaking or enterprise violated the TVPRA as to the Plaintiff.

80. Defendants knew or should have known about the nature of the sex trafficking occurring at the subject hotels, including as they related to Plaintiff, a victim, due to the many red flags then and there existing, including but not limited to:

(a) constant foot traffic of sex buyers to the traffickers' rented room(s) to have sex with trafficked victims;
(b) trafficked victims would walk around hotel grounds drug and/or alcohol impaired, sleep deprived, hygiene impaired, behavior impaired, with visible bruising, malnourished, and in sexually explicit clothing;
(c) suspicious individuals loitering outside the hotel rooms when a sex buyer would enter a room;
(d) inside the hotel(s) room(s) rented by the traffickers (or at the direction of the traffickers) there was a suspicious bunch of people and suspicious items including cash, drugs, drug paraphernalia, condoms, lubricants which was observed by housekeeping staff and in plain sight of housekeeping staff;
(e) traffickers monitoring hotel(s) hallway, door of room(s) and walking hotel(s) perimeter;
(f) traffickers shadowing Plaintiff (or having another shadow Plaintiff) in plain sight of hotel(s) staff;
(g) Plaintiff soliciting for sex buyers on the hotel(s) premises at the direction of her traffickers,
(h) Plaintiff's room exhibited signs of commercial sex work,
(i) loud noise and yelling emanating from room where sex trafficking of Plaintiff was occurring

(j) traffickers utilizing physical and verbal abuse on and as to Plaintiff and at times in plain sight and earshot of Defendants' staff

(k) overt evidence that Plaintiff was being induced by force, fraud and coercion to have sex with sex buyers on the subject premises [e.g. (1) visible bruising (2) overt physical deterioration of Plaintiff, (3) physical and/or verbal abuse occurring in common areas of the subject hotels in view and/or earshot of staff of Defendants, (4) traffickers overtly asserting control over Plaintiff in common areas of the hotel(s) in view and/or earshot of staff of Defendants (5) intermittent screaming from room(s) where trafficking of Plaintiff occurred sufficiently loud to be heard by staff outside the room

and (l) other commonly known sex trafficking red flags which the above captioned Defendants knew or should have known of had anti-trafficking measures been timely and properly implemented at the hotel(s).

81.     Defendants' staff witnessed and observed signs and indicators of sex trafficking including items set forth in the paragraph above.

82.     When being trafficked at the subject hotels, Plaintiff interacted with Defendants' staff, and Defendants' staff witnessed and observed Plaintiff, her trafficker, as well as a frequent procession of sex buyers going in and out of the subject rented rooms, contemporaneous with other signs and indicators of trafficking occurring on the subject premises.

83.     Plaintiff knows that individuals that witnessed and observed red flags indicative for suspicion for sex trafficking were staff members in that the staff were readily identifiable to Plaintiff either by her knowing of the individual and/or by means of the staff wardrobe/nametag/hotel logo and/or by means of a staff member being in an employee restricted area.

84.     Defendants was involved and affirmatively took actions as the hotel owner and operator on Defendants' subject premises during the relevant time period to advance the objective of this undertaking by (a) Defendants repeatedly renting rooms to Plaintiff's traffickers when Defendants knew or should have known said traffickers was engaged in sex trafficking on Defendants' premises including as to Plaintiff in violation of the TVPRA, (b) Defendants associating with Plaintiff's traffickers in an effort to force her to serve their business objective,

(c) Defendants allowing commercial dealings with the aforesaid traffickers to continue on the subject premises and to be reinstated for a profit motive, (d) staff and employees of Defendants acting as lookouts and informants, while in the scope of their employment, for the benefit of the traffickers so as to alert the aforesaid traffickers of police activity or similar type warning alerts, (e) Defendants knowingly facilitating and/or negligently facilitating the traffickers' activities, i.e., the sex trafficking of Plaintiff, and (f) in otherwise being actively involved and affirmatively enabling Plaintiff's traffickers and facilitating their venture's success.

85.    Defendants' failure, by its agents, servants, staff, and employees, to timely and properly prevent the sex trafficking or timely intervene regarding same was a proximate and competent cause and substantial factor in causing Plaintiff's severe injuries in this case including, but not limited to, being the victim of sex trafficking when at this subject hotels and suffering personal injury and the trauma physically and mentally of being induced to engage in commercial sex with multiple sex buyers per day,  while being trafficked, and while simultaneously being under fear of severe harm or death if she did not comply as well as all residual injuries.

86.    These Defendants, during the relevant time period, could deny accommodation and/or eject a guest for a number of reasons including, but not limited to, (1) guest visibly under the influence of drugs or alcohol, (2) guest creating a nuisance to the public; (3) guest believed to use a hotel(s) room for unlawful purposes, (4) guest uses hotel(s) amenities and premises for unlawful acts, (5) guest brings in extra unregistered guests, (6) guests behavior reasonably disturbs other guests (7) guest violates other rules set by the hotel(s) and (8) for other indicated reasons.

87.    Plaintiff being sex trafficked at these subject hotels was a proximate cause, competent cause and substantial factor in causing her severe and permanent injuries including

but not limited to personal injuries including the horror of being a victim of sex trafficking as well as significant levels of psychological trauma due to the levels of abuse she was caused to endure during the time she was trafficked.

88.    As a direct and proximate result of Defendants' involvement and multiple failures to act, mandate, establish, execute anti-trafficking measures and modify their anti-trafficking efforts at its hotel(s) property, Plaintiff was sex trafficked, sexually exploited, and victimized repeatedly at Defendants' hotel(s) in violation of the TVPRA.

89.    Because of being sex trafficked at the subject hotels, Plaintiff suffered and will continue to suffer substantial economic, physical, mental, emotional, psychiatric, psychological injuries as the result of being trafficked and sexually exploited at the subject hotels in violation of 18 U.S.C. §1591.

## COUNT II
## VIOLATION OF CHILD ABUSE VICTIMS RIGHTS ACT, 18 U.S.C. § 2255 ("CAVRA")

90.    Any person who, while a minor, "was a victim of a violation of section . . . 1591 [among others] . . . and who suffers personal injury as a result of such violation, regardless of whether the injury occurred while such person was a minor, may sue in any appropriate United States District Court and shall recover the actual damages such person sustains or liquidated damages in the amount of $150,000, and the cost of the action, including reasonable attorney's fees and other litigation costs reasonably incurred." 18 U.S.C. § 2255.

91.    Plaintiff(s) was a minor at the time of the sex trafficking described herein in violation of § 1591.

92.    Because of being sex trafficked at the subject hotel(s), Plaintiff(s) suffered and will continue to suffer substantial economic, physical, mental, emotional, psychiatric,

psychological injuries as the result of being trafficked and sexually exploited at the subject hotel(s) in violation of 18 U.S.C. §1591.

## COUNT III
## VIOLATION OF O.C.G.A. § 51-1-56

93.    Plaintiff incorporates the foregoing paragraphs as though fully set forth herein.

94.    O.C.G.A. § 51-1-56(a) provides:

"A victim may bring a civil action against an individual or entity that knowingly benefitted, financially or by receiving anything of value, from participation in a venture that such person knew or should have known engaged in any act of trafficking for labor or sexual servitude in violation of Code Section 16-5-46."

95.    Plaintiff is a victim of human trafficking as defined in O.C.G.A. § 16-5-46.

96.    Defendant Hotels, by and through their agents, employees, and/or management, knowingly benefitted financially and/or received other things of value by participating in a venture that engaged in human trafficking and sexual servitude involving the Plaintiff.

97.    Defendant had actual or constructive knowledge that human trafficking was occurring on or within its premises based on one or more of the following:

    a.  Frequent, unexplained cash transactions;
    b.  Extended stays by individuals with minimal luggage and no identification;
    c.  High volume of foot traffic to and from specific rooms;
    d.  Signs of physical abuse, coercion, or distress displayed by the Plaintiff;
    e.  Complaints or reports from hotel staff or guests;
    f.  Involvement of law enforcement and/or prior criminal activity related to trafficking at the property;
    g.  Failure to implement policies or training for recognizing and reporting human trafficking.

98.     Despite this knowledge, Defendants failed to take reasonable measures to prevent trafficking on its premises and continued to profit from the illicit activity by renting rooms and providing services that facilitated the trafficking venture.

99.     As a direct and proximate result of Defendants' knowing benefit from and participation in the trafficking venture, Plaintiff suffered physical, emotional, and psychological injuries, including but not limited to trauma, humiliation, loss of liberty, and ongoing mental health harm.

100.     Pursuant to O.C.G.A. § 51-1-56(b), Plaintiff is entitled to recover actual damages, compensatory damages, punitive damages, attorney's fees, court costs, and any other relief deemed just and proper by the Court.

## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants as identified in the above-referenced Count and as follows:

a)  All available compensatory damages for the described losses with respect to the above cause of action;
b)  Past and future emotional distress;
c)  Consequential and/or special damages;
d)  All available noneconomic damages, including without limitation pain, suffering, and loss of enjoyment of life;
e)  Disgorgement of profits obtained through unjust enrichment;
f)  Restitution;
g)  All damages allowable under the TVPRA;
h)  All damages allowable under the O.C.G.A. § 51-1-56;

i) Reasonable and recoverable attorney's fees;
j) Punitive damages with respect to each cause of action;
k) Costs of this action; and
l) Pre-judgement and all other interest recoverable.

Respectfully Submitted,

**ANDREOZZI + FOOTE**

Dated: **11/11/2025**

*/s/ Nathaniel L. Foote*
Nathaniel L. Foote, Esq.
nate@vca.law
4503 N. Front St.
Harrisburg, PA 17110
Attorney for Plaintiff