**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| M.W.,<br>Plaintiff,<br>v.<br>RADHESHVAR, LLC; KUZZINS BUFORD, LLC; RITZ CARLTON HOTEL COMPANY, LLC; CPLG PROPERTIES, LLC,<br>Defendants. | Civil Action No.<br>1:25-cv-04747-SDG |

**OPINION AND ORDER**

This action concerns the potential liability of hotel defendants for sex trafficking committed on their premises. Before the Court are three Motions to Dismiss, filed by Defendants Kuzzins Buford, LLC [ECF 35], The Ritz-Carlton Hotel Company, LLC [ECF 42], and CPLG Properties, LLC [ECF 69]. All three Defendants argue that Plaintiff M.W.'s First Amended Complaint (FAC) fails to state a claim. The Court has carefully reviewed the filings and holds that the Motions are **GRANTED in part** and **DENIED in part**. They are **GRANTED** as to Counts II and III, but they are **DENIED** as to Count I. In addition, Plaintiff M.W.'s Motion to Proceed Under Pseudonym [ECF 54] is **GRANTED**.

## I. Background[1]

M.W. alleges that, in 2015 while she was 15 and 16 years old, she was the victim of sex trafficking.[2] Jamaal and Quintavious Obie, two brothers, trafficked M.W. out of five Atlanta hotels: a Motel 6 hotel and a Super 8 hotel, both located on Chamblee Tucker Road; a La Quinta Inn & Suites by Wyndham on Chantilly Drive; a Microtel Inn & Suites by Wyndham at Corporate Boulevard; and a Ritz Carlton hotel on Peachtree Road.[3] The FAC asserts that, during the time that M.W. was trafficked, Defendant Radheshvar, LLC was the "hotel owner, hotel operator, franchisee, manager, and/or supervisor" of the Motel 6 and Super 8 hotels; Defendant CPLG Properties, LLC was the owner and operator of the La Quinta Inn & Suites; Defendant Kuzzins Buford, LLC was the owner and operator of the Microtel Inn & Suites; and Defendant Ritz-Carlton Hotel Company, LLC was the

1 The Court accepts the well-pled factual allegations in the FAC as true for purposes of this Order. *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1274 (11th Cir. 1999).

2 ECF 32, ¶¶ 18–20.

3 *Id.* ¶¶ 9–14.

owner and operator of the Ritz Carlton hotel.[4] Defendants Kuzzins, Ritz Carlton, and CPLG move to dismiss, while Radheshvar does not.[5]

The FAC alleges that the Obie brothers would secure rooms at these hotels for the purpose of trafficking M.W.[6] They purportedly did so with the help of Quintavious's wife, Emily Waddell: either Quintavious or Emily would book the rooms themselves, or they would make M.W. secure the reservations using Emily's name.[7] The Obie brothers used various methods of manipulation and abuse to keep M.W. compliant, including drugs and alcohol and threats to physically harm her or her family.[8] M.W. alleges that Defendants' staff could hear the threats the Obie brothers made to M.W. and could see M.W.'s obvious fear and distress as she moved through the hotel's common areas.[9] Some of Defendants' staff allegedly served as lookouts and informants for the traffickers, alerting them of police activity.[10]

---

4 *Id.*

5 ECFs 35, 42, 69.

6 ECF 32, ¶¶ 30–31.

7 *Id.* ¶¶ 29–30.

8 *Id.* ¶¶ 26–29.

9 *Id.* ¶¶ 63, 80–81, 97.

10 *Id.* ¶ 49.

In addition, M.W. claims Defendants were on notice of the sex trafficking occurring within their hotels because of various "red flags."[11] Specifically, she asserts:

- There was constant foot traffic of sex buyers to the traffickers' rented room(s) to have sex with trafficked victims;
- Trafficked victims would walk around the hotel premises impaired by drugs and/or alcohol, wearing sexually explicit clothing, appearing sleep-deprived and hygiene-impaired, and exhibiting visible bruising and malnutrition;
- Suspicious individuals loitered outside the hotel rooms when a sex buyer would enter a room;
- Suspicious people were inside the hotel rooms rented by the Obie brothers, with suspicious items that housekeeping staff would observe, such as cash, drugs, drug paraphernalia, condoms, and lubricants;
- Traffickers monitored hotel hallways and rooms and walked the hotel perimeters;
- Traffickers shadowed M.W. in plain sight of hotel staff;
- M.W. solicited sex buyers on the hotel premises at the direction of her traffickers; and
- Loud noises, yelling, and screaming would emanate from rooms in which M.W. was being trafficked.[12]

---

11 *Id.* ¶ 80.

12 *Id.*

To attract sex buyers, the Obie brothers used Backpage, a prostitution website, to post advertisements of M.W.[13] It was through one of these Backpage advertisements that the Georgia Bureau of Investigation (GBI) found M.W.; GBI subsequently performed a "sting" operation at the Ritz-Carlton Buckhead and rescued M.W. from her traffickers.[14]

M.W. filed her initial complaint on August 21, 2025, and she filed the FAC on November 11, 2025.[15] The FAC asserts three statutory causes of action, alleging that all four Defendants violated the: Trafficking Victims Protection Reauthorization Act of 2008, 18 U.S.C. § 1595 (TVPRA) (Count I); the Child Abuse Victims Rights Act, 18 U.S.C. § 2255 (CAVRA) (Count II); and O.C.G.A. § 51-1-56 (Count III).[16] Kuzzins, Ritz Carlton, and CPLG move to dismiss, arguing that the FAC is an impermissible "shotgun" pleading and that it fails to state a claim.[17]

---

13 *Id.* ¶¶ 25, 31. M.W. refers to Backpage three times in the FAC, though she simply refers to it as "Backpage" without defining its nature. The Court takes notice of public reports from the U.S. Department of Justice defining Backpage as "a prostitution website." *Three Owners of Notorious Prostitution Website Backpage Sentenced*, U.S. DEP'T OF JUSTICE, OFFICE OF PUB. AFFAIRS (Aug. 28, 2024) https://www.justice.gov/archives/opa/pr/three-owners-notorious-prostitution-website-backpagecom-sentenced [https://perma.cc/Y76V-EPY5]. *See* Fed. R. Evid. 201.

14 ECF 32, ¶¶ 31–32.

15 ECFs 1, 32.

16 ECF 32, ¶¶ 56–100.

17 ECFs 35, 42, 69.

## II. The Motions to Dismiss

### A. Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." While this standard does not require "detailed factual allegations," the Supreme Court has held that "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

To withstand a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Am. Dental Ass'n v. Cigna Corp.*, 605 F. 3d 1283, 1289 (11th Cir. 2010) (quoting *Twombly*, 550 U.S. at 570). A complaint is plausible on its face when a plaintiff pleads sufficient factual content for the Court to draw the reasonable inference that the defendant is liable for the conduct alleged. *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. A complaint must also present sufficient facts to "raise a reasonable expectation that discovery will reveal evidence of the claim." *Am. Dental Ass'n*, 605 F.3d at 1289 (quoting *Twombly*, 550 U.S. at 556).

At the motion to dismiss stage, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *FindWhat Inv'r Grp. v. FindWhat.com*, 658 F.3d 1282, 1296 (11th Cir. 2011) (quoting *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261 (11th Cir. 2006)). The Court is not bound, by contrast, to accept legal conclusions as true. *Iqbal*, 556 U.S. at 678–79.

**B. The FAC is not a shotgun pleading.**

The three moving Defendants argue that the FAC is a shotgun pleading and therefore violates Rule 8(a).[18] A shotgun pleading fails "to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests," which, by definition, "patently violate[s]" the federal pleading standards. *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015) (citations omitted); *Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1356 (11th Cir. 2018). The Eleventh Circuit has identified four categories of shotgun pleadings. *Weiland*, 792 F.3d at 1321–23. They are:

> (1) "a complaint containing multiple counts where each count adopts the allegations of all preceding counts;" (2) a complaint that contains "conclusory, vague, and immaterial facts not obviously connected to any particular cause of action;" (3) a complaint that fails to "separat[e] into a different count each cause of action or claim for relief;" and (4) a complaint that "assert[s] multiple claims against multiple defendants without

[18] ECF 35, at 3–6; ECF 42, at 6–8; ECF 69-1, at 5–6.

> specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against."

*Sayers v. Activision Blizzard, Inc.*, 2025 WL 2553076, at *3 (S.D. Ga. Sept. 4, 2025) (quoting *Weiland*, 792 F.3d at 1321–23). The moving Defendants argue that the FAC is the fourth type of shotgun pleading because it brings all three counts against all four Defendants, referring collectively to "Defendants" purportedly without specifying precise factual allegations against any individual Defendant.[19] They claim that such group allegations fail to give them notice, posturing that they have no way of knowing whether each act or omission pertains to an individual Defendant specifically or whether individual Defendants are actually exempted from some allegations.[20]

This argument is unavailing. "The general rule in this circuit in multi-defendant pleadings . . . is that '[w]hen multiple defendants are named in a complaint, the allegations can be and usually are to be read in such a way that each defendant is having the allegation made about him individually.'" *Fed. Trade Comm'n v. Hornbeam Special Situations, LLC*, 308 F. Supp. 3d 1280, 1288 (N.D. Ga. 2018) (quoting *Crowe v. Coleman*, 113 F.3d 1536, 1539 (11th Cir. 1997)). Here, it is not difficult to read the FAC as referring to ***all*** Defendants when it makes

---

19 ECF 35, at 4–6; ECF 42, at 6–8; ECF 69-1, at 5–6.

20 ECF 35, at 4–6; ECF 42, at 6–8; ECF 69-1, at 5–6.

allegations against "Defendants." After all, M.W. is bringing claims concerning sex trafficking on hotel premises—the FAC may logically be read to plead that the traffickers conducted themselves and interacted with Defendants' hotel staff the same at each property, and it is further plausible that each "red flag" was present and observable to each team of staff. As such, the FAC is not a shotgun pleading. *See C.S. v. Wyndham Hotels & Resorts, Inc.*, 538 F. Supp. 3d 1284, 1293 (M.D. Fla. 2021) (quoting *Kyle K. v. Chapman*, 208 F.3d 940, 944 (11th Cir. 2000)) (reasoning that "[t]he failure to specify a particular defendant" does not turn a complaint into a shotgun pleading when "[t]he complaint can be fairly read to aver that all defendants are responsible for the alleged conduct"). While Defendants may disagree that the FAC's allegations are accurate, that dispute is for another day.

**C. The FAC survives dismissal in part.**

The three moving Defendants also move to dismiss on the alternative basis that all three counts fail to state a claim upon which relief can be granted.[21] M.W. opposes dismissal of Counts I and II, but she consents to the dismissal of Count III; M.W. concedes that her state-law claim under O.C.G.A. § 51-1-56 is likely

---

21 ECF 35, at 6; ECF 42, at 8; ECF 69-1, at 6.

barred by Georgia retroactivity principles.[22] As such, Count III is dismissed as to all Defendants.[23] The Court will address the remaining two counts in turn.

**1. The TVPRA claims survive dismissal.**

The TVPRA offers a civil remedy to people who have experienced certain types of human trafficking. 18 U.S.C. § 1595(a). The statute states in part:

> An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

Under the TVRPA, therefore, a victim of sex trafficking may bring either (a) a direct civil claim against the perpetrator of the trafficking or (b) a "beneficiary" civil claim against "whoever knowingly benefits" from the trafficking. 18 U.S.C. §

---

22 ECF 39, at 2. Section 51-1-56, which became effective in 2021, is Georgia's counterpart statute to the TVPRA. *See Doe (K.B.) v. G6 Hosp., LLC*, 2023 WL 8650785, at *12 (N.D. Ga. Dec. 14, 2023) (discussing § 51-1-56's similarity to the TVPRA and the Georgia presumption against retroactivity). Georgia has a strong presumption against retroactivity, *see id.*, and the trafficking complained of here occurred at least five years prior to § 51-1-56's enactment.

23 *Loman Dev. Co. v. Daytona Hotel & Motel Suppliers, Inc.*, 817 F.2d 1533, 1537 (11th Cir. 1987) ("A District Court may properly on its own motion dismiss an action as to defendants who have not moved to dismiss where such defendants are in a position similar to that of moving defendants or where claims against such defendants are integrally related.").

1595(a). In this case, M.W. seeks to establish beneficiary liability against the hotel Defendants.

The Eleventh Circuit, in *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714 (11th Cir. 2021), articulated the elements of a TVPRA beneficiary claim. To state such a claim, a plaintiff must plausibly allege that the defendant:

> (1) knowingly benefited, (2) from taking part in a common undertaking or enterprise involving risk and potential profit, (3) that undertaking or enterprise violated the TVPRA as to the plaintiff, and (4) the defendant had constructive or actual knowledge that the undertaking or enterprise violated the TVPRA as to the plaintiff.

*Id.* at 726.

#### *i.* **Knowing Benefit**

As to the first element, a plaintiff must allege that the defendant "knew it was receiving some value from participating in the alleged venture." *Id.* at 724. In this case, M.W. alleges that Defendants rented the rooms to her traffickers and received revenue from the room rentals. It is now well-established that the rental of a room constitutes a financial benefit from a relationship with the trafficker sufficient to meet this element of the § 1595(a) standard. *See A.B. v. H.K. Grp. of Co.*, 2022 WL 467786, at *4 (N.D. Ga. Feb. 9, 2022) (holding that the money received from room rentals constitutes a benefit, knowingly received); *J.G. v. Northbrook Indus., Inc.*, 619 F. Supp. 3d 1228, 1234 (N.D. Ga. 2022) (same); *A.G. v. Northbrook*

*Indus., Inc.*, 2022 WL 1644921, at *2 (N.D. Ga. May 24, 2022); *S.Y. v. Naples Hotel Co.*, 476 F. Supp. 3d 1251, 1257 (M.D. Fla. 2020) (same and collecting cases). As such, M.W. has plausibly alleged the first element of her TVPRA beneficiary claims.

#### *ii.* Participation

The second element requires a plaintiff to allege that a defendant participated in a venture. As to this element, the Eleventh Circuit has made clear that the definition of "participation in a venture" is less stringent than the criminal provisions of § 1591(e)(4).[24] *Red Roof Inns*, 21 F.4th at 724. Lacking a scienter requirement, civil TVPRA beneficiary claims require a plaintiff to allege, for purposes of the second element, that the defendant took part in a common undertaking or enterprise involving risk and potential profit; the plaintiff need not allege that the defendant "knowingly facilitated a violation" under the TVPRA. *Id.* at 724–25. However, the Eleventh Circuit has made clear that "observation is not participation," meaning a plaintiff must plead "something more" than a defendant's "provision of standard commercial services to traffickers . . . paired with knowledge of [the traffickers'] activities." *A.G. v. Northbrook Indus., Inc.*, 171

---

[24] Under the criminal provisions, "participation in a venture" is defined as "knowingly assisting, supporting, or facilitating a violation of subsection(a)(1)," which criminalizes commercial sex acts of minors or those obtained through threat or force. *Red Roof Inns*, 21 F.4th at 724 (quoting § 1591(e)(4)).

F.4th 1257, 1268–69 (11th Cir. 2026). That "something more" necessarily requires courts to engage in a "fact-specific inquiry." *Id.*

Much of M.W.'s allegations amount to mere "observation,"[25] though she does have one allegation that supplies the "something more" required of a TVPRA beneficiary claim. M.W. alleges that Defendants' hotel staff served as lookouts and informants for her traffickers to alert them of potential police activity.[26] She alleges her traffickers befriended and compensated staff members for their vigilance, and that the staff members were acting within the scope of their employment while performing these functions.[27] In *A.G.*, the Eleventh Circuit considered a defendant's offering of "personal support" to a sex trafficker sufficient to show the defendant participated in a venture. *Id.* at 1270–71. Here, the fact that staff members were, allegedly, working to keep the Obie brothers' sex trafficking operation undetected by law enforcement certainly constitutes the sort of personal

---

25 The FAC puts forward many allegations suggesting Defendants were on notice of the sex trafficking going on within their hotels. M.W. alleges, for example, that she was visibly in distress and under the control of the Obie brothers and that hotel staff could see the heavy foot traffic to her room, see signs of trafficking in the room, and hear signs of trafficking from outside the room. ECF 32, ¶¶ 63, 80–81, 97. Under Eleventh Circuit precedent, such allegations demonstrate "[a] hotel's general friendliness toward and awareness of sex trafficking," but "while deplorable," standing alone, they are "not enough to establish 'participation in a venture' under § 1595." *A.G.*, 171 F.4th at 1271.

26 ECF 32, ¶¶ 49, 70, 84.

27 *Id.*

support, provided by Defendants to M.W.'s traffickers, that elevates M.W.'s allegations from asserting Defendants merely observed sex trafficking to claiming they actually participated in a venture. As such, the Court concludes that M.W. has sufficiently pled the second element.

#### ***iii.*** **Violation as to the Plaintiff**

The third element requires a plaintiff to allege "that the venture . . . violated the TVPRA as to the plaintiff." *Red Roof Inns*, 21 F.4th at 725. The TVPRA criminalizes various acts of human trafficking. 18 U.S.C. § 1591. In this case, M.W. specifically alleges that she was trafficked in violation of subsection (a),[28] which makes it a crime to "caus[e]" a person under 18 years old to "engage in a commercial sex act." 18 U.S.C. § 1591(a). Consequently, M.W. must plausibly allege that the venture in which Defendants participated caused M.W. to engage in a commercial sex act.

The Court concludes that M.W.'s allegations are more than sufficient to satisfy this element. The FAC alleges, and none of the moving Defendants dispute, that M.W. was sex trafficked as a minor and was caused to engage in commercial sex acts.[29] As a result, M.W. has satisfied the third element of her TVPRA beneficiary claim.

---

[28] *Id.* ¶¶ 2, 53, 88.

[29] *Id.* ¶ 3.

### *iv.* Knowing Violation

To satisfy the fourth and final element, the complaint must allege that a defendant had actual or constructive knowledge that the venture "violated the TVPRA." *A.G.*, 171 F.4th at 1270. District courts in this Circuit once understood the TVPRA's knowledge requirement to mean that "the venture violated the TVPRA as to the plaintiff." *See, e.g., J.G.*, 619 F. Supp. 3d at 1238 (citing *Red Roof Inns*, 21 F.4th at 725). However, in *A.G.*, the Eleventh Circuit recently made clear that this language in *Red Roof Inns* was only dicta. *A.G.*, 171 F.4th at 1270. The Eleventh Circuit considered the plain language of § 1595(a), noted that it does not concern a defendant's knowledge as to the specific plaintiff-victim, and held that the fourth element of a beneficiary claim requires "nothing more" than knowledge that the venture violated the TVPRA. *Id.*

Under this framework, M.W. has more than sufficiently pled that Defendants had knowledge of the venture's TVPRA violations. According to the FAC, Defendants observed multiple sex trafficking red flags: constant foot traffic of sex buyers coming and going from rooms rented to the Obie brothers and individuals loitering outside of these rooms; yelling and screaming noises emanating from their rooms while trafficked victims and sex buyers were inside; objects associated with sex trafficking—such as cash, drugs, drug paraphernalia, condoms, and lubricants—strewn out within the rooms; and trafficked victims

walking around the hotel premises wearing minimal clothing, while visibly impaired by drugs and alcohol, and exhibiting signs of distress, poor hygiene, and malnutrition, and, at times, soliciting sex.[30] M.W. also alleges that she was made to secure room reservations using an adult woman's name, despite being only 15 or 16 years old at the time.[31]

Accordingly, M.W. has sufficiently alleged facts to support each element of her TVPRA claim. Defendants' motion to dismiss is denied as to the TVPRA claims.

**2. The FAC fails to state a claim under CAVRA.**

M.W. also seeks to hold Defendants liable under CAVRA. The statute provides:

> Any person who, while a minor, was a victim of a violation of section . . . 1591 [among others] . . . and who suffers personal injury as a result of such violation, regardless of whether the injury occurred while such person was a minor, may sue in any appropriate United States District Court and shall recover the actual damages such person sustains or liquidated damages in the amount of $150,000, and the cost of the action, including reasonable attorney's fees and other litigation costs reasonably incurred.

18 U.S.C. § 2255(a).

---

30 *Id.* ¶¶ 63, 80–81, 97.

31 *Id.* ¶¶ 29–30.

The three moving Defendants argue M.W. has failed to state a claim under CAVRA, insisting that the statute provides for civil liability against only the perpetrator of the enumerated offense.[32] Because M.W. never claimed that Defendants violated § 1591, the criminal counterpart on which § 1595 is based, Kuzzins, Ritz Carlton, and CPLG argue the CAVRA claims against them fail as a matter of law.[33] Notably, whether CAVRA provides for civil liability against persons other than the perpetrators of the enumerated offenses is an unsettled and not well-developed issue of law among the federal district courts. No court in this district has addressed a CAVRA claim,[34] and only one court in this circuit has

---

32 ECF 35, at 16–17; ECF 42, at 22–24; ECF 69-1, at 16–19.

33 ECF 35, at 16–17; ECF 42, at 22–24; ECF 69-1, at 16–19.

34 While M.W. argues in her responsive brief that two courts in this district ***have*** considered CAVRA claims—arguing specifically that they indeed "rejected attempts to dismiss CAVRA claims based on arguments that mirror [defendants' arguments]"—the cases she cites do not mention § 2255. *See* ECF 51, at 10–11 (citing *J.C. v. I Shri Khodiyar, LLC*, 624 F. Supp. 3d 1307, 1322–23 (N.D. Ga. 2022); *D.H. v. Tucker Inn Inc.*, 689 F. Supp. 3d 1304, 1314 (N.D. Ga. 2023)). Notably, the pin cite that she gives for *D.H.* does not even exist—that opinion concludes on page 1312. Her out-of-circuit citations fare no better; she cites *A.B. v. Marriott Int'l, Inc.*, 455 F. Supp. 3d 171, 192 (E.D. Pa. 2020) to support her CAVRA claims, despite that case again not mentioning CAVRA. Whether these misrepresentations were the result of misplaced reliance on artificial intelligence tools or simply old-fashioned, sloppy research, the Court **CAUTIONS** Plaintiff's Counsel that they are bound by Rule 11's certification provision; future misrepresentations to this Court will result in sanctions. *See* Fed. R. Civ. P. 11.

addressed a CAVRA claim against a non-perpetrator defendant.[35] *See Jane Doe No. 8 v. Royal Caribbean Cruises, Ltd.*, 860 F. Supp. 2d 1337, 1339 (S.D. Fla. 2012). The district courts considering the scope of possible defendants to a CAVRA claim note that the statute "does not specify against whom [a lawsuit under § 2255] may be brought." *Id.*; *see, e.g.*, *A.M. v. Wyndham Hotels & Resorts, Inc.*, 728 F. Supp. 3d 787, 795 (S.D. Ohio 2024). Because of that omission, courts have reached varying decisions regarding against whom a CAVRA claim may be maintained.

One line of cases, as exemplified by *A.M.*, holds that plaintiffs may sue "beneficiaries of and participants in the many crimes enumerated in § 2255, so long as plaintiffs' claims comport with the traditional requirements of standing." 728 F. Supp. 3d at 795. In reaching this conclusion, the *A.M.* court cited a familiar canon of statutory interpretation, that "courts may not add or subtract words from a statute"; the district court reasoned that to limit the realm of possible defendants would require it to "re-write the statute by inserting (after 'may sue') the words 'the offender' or 'the perpetrator.'" *Id.* (citing *Royal Caribbean*, 860 F. Supp. 2d at 1340).

---

35 The in-circuit case, *Royal Caribbean*, concerned whether § 2255 was "intended to incorporate th[e] long-standing principle of federal maritime law" that "a cruise line is strictly liable for a crew member's assault of a passenger." 860 F. Supp. 2d at 1339–40. As such, it is not readily applicable here.

However, other courts have reached the opposite conclusion, holding that "to be subject to liability under section 2255, a defendant must be proven to have violated at least one of the criminal statutes listed in section 2255 by a preponderance of the evidence." *Doe v. Liberatore*, 478 F. Supp. 2d 742, 755 (M.D. Pa. 2007); *see also Doe 9 v. Varsity Brands, LLC*, 679 F. Supp. 3d 464, 480–82 (D. S.C. 2023); *Doe v. City of Gauley Bridge*, 2022 WL 3587827, *12–*13 (S.D. W.Va. Aug. 22, 2022). *Liberatore* relied on the legislative history of § 2255. 478 F. Supp. 2d at 755. It considered statements made by House Representatives sponsoring various versions of the bill, in which they discussed the evidentiary standard required to hold a defendant liable under § 2255. *Id.* Importantly, the theoretical civil defendant in these debates was always a criminal perpetrator, and it was for this reason that the *Liberatore* court required a § 2255 defendant be proven to have violated one of the statute's enumerated offenses. *Id.* Other courts reach this same conclusion by reasoning that § 2255's "silence on the subject of secondary liability"—meaning, liability for aiding and abetting, as opposed to liability for a direct violation—"means there is none." *Gauley Bridge*, 2022 WL 3587827, at *13 (citing *Boim v. Holy Land Found. for Relief & Dev.*, 549 F.3d 685, 689 (7th Cir. 2008); *Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 185 (1994)).

This Court concludes that the latter reading is the superior reading of § 2255, though it is not necessary to rely on legislative history to reach this conclusion. Undersigned interprets the statutory silence as to secondary liability to mean that it does not exist. This result is consistent with the plain language of the statute. While *A.M.* posited that confining § 2255's reach to perpetrator defendants would be akin to "re-writ[ing] the statute," 728 F. Supp. 3d. at 795, the same argument could be made about allowing far-reaching civil liability when the statute does not expressly authorize it.

The *A.M.* Court relied on the canon of statutory interpretation, that "courts may not add or subtract words from a statute"; but the more traditional, Latin language for this canon is: "casus omissus pro omisso habendus est," which directly translates to "a case omitted is to be held as intentionally omitted." *See* A. SCALIA & B. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 93 (2012) ("Nothing is to be added to what the text states or reasonably implies (casus omissus pro omisso habendus est)."). In undersigned's view, a more faithful reliance on this canon favors limiting liability, rather than creating liability not explicitly provided for by the statute. "The place to make new legislation . . . lies in Congress"—courts are tasked with applying the text of the statute, not with improving upon it or filling statutory gaps. *Bostock v. Clayton Cnty.*, 590 U.S. 644, 680–81 (2020). Where Congress has not clearly provided for secondary civil

liability in § 2255, the Court should not read its silence to mean that it did and expand the statute beyond its express scope. *See Central Bank of Denver*, 511 U.S. at 185 (declining to interpret statutory silence as "tantamount to an implicit congressional intent to impose [secondary] liability" in § 10(b) of the Securities Exchange Act). "Where Congress knows how to say something but chooses not to, its silence is controlling." *Animal Legal Def. Fund v. U.S. Dep't of Agric.*, 789 F.3d 1206, 1217 (11th Cir. 2015). As such, the Court holds that a claim under § 2255 is limited to a defendant who committed the acts described in the listed offenses.

For that reason, M.W.'s claims under CAVRA must be dismissed, as M.W. has not alleged that Defendants violated § 1591.[36] Accordingly, the motions to dismiss are granted as to Count II, and this ruling applies to all Defendants.

## III. The Motion to Proceed Under Pseudonym

Lastly, M.W. has filed a motion requesting leave to proceed anonymously in all public filings.[37] The Motion is unopposed, though Ritz Carlton requests that M.W. still be required to disclose her full name for purposes of discovery.[38]

---

36 Indeed, the FAC can be read to concede that Defendants did ***not*** violate the criminal statute. *See* ECF 32, ¶ 62 (noting that the lawsuit concerned "prong three" of § 1595, which pertains to "civil defendants who did not violate § 1591"). In any event, M.W. has not expressly made the argument that Defendants violated § 1591. *See id.* ¶¶ 90–92.

37 ECF 54.

38 ECF 60.

Because the Court finds that M.W.'s privacy and safety interests outweigh the public's interest in knowing M.W.'s identity, the Motion is granted. *See Plaintiff B v. Francis*, 631 F.3d 1310, 1315–16 (11th Cir. 2011). It is **ORDERED** that all material, documents, pleadings, exhibits, and evidence of any kind filed in this case shall refer to Plaintiff as M.W. with no other identifying information. This Order does not apply to documents exchanged privately in discovery.

## IV. Conclusion

Defendants Kuzzins, Ritz Carlton, and CPLG's Motions to Dismiss [ECFs 35, 42, 69] are **GRANTED in part** and **DENIED in part**. Counts II and III are **DISMISSED** as to all Defendants for failure to state a claim; only Count I shall proceed. Further, M.W.'s Motion to Proceed Under Pseudonym [ECF 54] is **GRANTED**.

Kuzzins, Ritz Carlton, and CPLG shall file their Answer to the surviving portions of the FAC within 14 days of this Order. The parties' Joint Preliminary Report and Discovery Plan must be filed within 30 days of this Order.

The Clerk is **DIRECTED** to submit this Order to undersigned after 30 days.

**SO ORDERED** this 21st day of September, 2026.

Steven D. Grimberg
United States District Judge